Jacqueline Mendez Soto, 022597
James E. Barton II, 023888
Daniella Fernandez Lertzman, 037943
**BARTON MENDEZ SOTO PLLC**
401 W. Baseline Road, Suite 205
Tempe, Arizona 85283
480-550-5165
*Jacqueline@bartonmendezsoto.com*
*James@bartonmendezsoto.com*
*Daniella@bartonmendezsoto.com*

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| River Chunnui, f/k/a Sarah Chunnui, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Peoria Unified School District, a political subdivision of Arizona; Heather Rooks, in her individual and official capacity; Rebecca Hill, in her individual and official capacity;<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**Jury Trial Requested** |

Plaintiff, River Chunnui ("Plaintiff"), by and through undersigned counsel, hereby files their Complaint and states as follows:

### INTRODUCTION

1.  [T]he past year has been nothing short of two members of [the Peoria Unified School District] board lobbying against a subgroup of individuals and children simply because of who they are. This is the very definition of discrimination. And this discrimination, prejudice,

> transphobia, and hatred for others [interruption by Defendant Rebecca Hill] which was modeled by two of our very own board members was then encouraged to be repeated by the same community members at each and every meeting. I'm here to say today that enough is enough. We have a moral responsibility to speak out against discrimination and injustice, even when those who commit such acts are in positions of power. The consequences of silence are too high for our queer and trans students who already experience higher rates of depression and suicidal ideation. Our students, our children, are watching us and counting on our voices…. We are ready to see our District and students thrive under a collective voice that does not tolerate prejudice to interfere with the running of a school district.

Chunnui, River. Peoria Unified Governing Board Meeting, 13 Jul. 2023, Glendale, Ariz. Public Comment.

2.      Plaintiff, a special education teacher, brings this complaint against Peoria Unified School District and two members of the governing board, Heather Rooks and Rebecca Hill, (jointly "Defendants") for their discriminatory, retaliatory, and tortuous actions against Plaintiff on the basis of gender and gender identity.

**JURISDICTION AND VENUE**

3.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff's claims arise under federal law, and the Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as the claims brought under federal law.

4.      Venue in this district is appropriate because all or a substantial part of the events or omissions giving rise to these claims occurred in this district. 28 U.S.C. § 1391(b)

**PARTIES**

5.     Plaintiff resides in Maricopa County. At all material times, Plaintiff was a special education teacher with Defendant Peoria Unified School District (the "District"). Plaintiff remains employed by the District. Plaintiff is transgender, identifies as non-binary, and uses they and them pronouns. Plaintiff's name given at birth is Sarah; however, Plaintiff is now known as River, their chosen name.

6.     Defendant Peoria Unified School District (the "District") is a public school district with schools in Glendale, Peoria, Surprise, and Youngtown, Arizona. The District serves more than 36,000 students in 34 elementary schools, seven high schools, and one non-traditional high school. The District's governing board is comprised of five members, each of whom resides within the school district and is elected to a four-year term. The governing board sets District policy and has final authority over all school district business. Governing board meetings are held at the District's administrative offices at 6330 W. Thunderbird Road, Glendale, Arizona.

7.     At all material times, Defendant Heather Rooks ("Rooks") resided in Maricopa County. She was elected to the District's governing board on November 8, 2022. At all material times, Rooks acted in her official and/or individual capacity that gave rise to the claims herein.

8.     At all material times, Defendant Rebecca Hill ("Hill") resided in Maricopa County. She was elected to the District's governing board on November 3, 2020. At all

material times, Hill acted in her official and/or individual capacity giving rise to the claims herein.

## ALLEGATIONS

### Brief Background

9.     Plaintiff has been an Arizona school teacher since July 2012, and has worked for the District since July 2018.

10.     For over five years, Plaintiff has served as a special education teacher to fourth and fifth graders at the District's Desert Harbor Elementary School ("Desert Harbor").

11.     Plaintiff is an exemplary teacher. They have never had an employment issue nor issues with the renewal of their teaching contract. This all changed when Plaintiff publicly expressed support for transgender students, made statements about transgender rights and legislation, and publicly expressed their own gender identity.

### March 31, 2022, Email and Ensuing Attacks

12.     On March 31, 2022, Plaintiff sent the following email (hereafter referred to as "March 31 Email") to all employees of Desert Harbor:

> Hello Fabulous Staff,
> I just wanted to let you know that you may see our students wearing more pink, teal, and white today. Today is a quickly growing annual event called "International Transgender Day of Visibility." Our President is expected to make some announcements today on new legislature to protect the rights of Trans students, any many of our students have taken a keen interest in these legislative movements.

> How can you help? If you notice a student purposefully wearing the colors of the trans flag, a simple "I see you" or "I support you" can go a long way.
>
> Thank you fabulous staff!
>
> > Mx. Sarah Chunnui M. Sp.Ed
> > Special Education Teacher
> > Resource Grades 4-5 | Desert Harbor Elementary
> > Pronouns: she/her; they/them

13.    Defendants have used Plaintiff's March 31 Email and Plaintiff's continued advocacy for themselves and the transgender community to harass, demonize, insult, and threaten them, as further developed below.

14.    On April 7, 2022, a media publication reported that District board members were questioning why they were not notified that students would be participating in "International Transgender Day of Visibility." ARIZONA DAILY INDEPENDENT, *School Officials Fail to Notify Parents and Board of Plans for "International Transgender Day of Visibility,"* Apr. 7, 2022. https://arizonadailyindependent.com/2022/04/07/school-officials-fail-to-notify-parents-international-day-of-visibility/ (last accessed on Feb. 29, 2024)

15.    The publication quoted then District board member and State Representative, Beverly Pingerelli, stating: "It is inappropriate for school personnel to be promoting these sorts of policies at work, and parents are rightfully upset at attempts to *sexualize* young children[.]" *Id.* (Emphasis added.)

16.    The publication reproduced Plaintiff's March 31 Email in its entirety.

17.     The publication also contained a picture of Plaintiff holding up a children's picture book, taken while Plaintiff read the book to students during a library event, Read Across America Guest Readers. The book is titled "Pink is for Boys," written by Robb Pearlman. The picture caption stated, "Mx. Sarah Chunnui filmed herself reading 'Pink is for Boys' by Robb Pearlman to young children for Desert Harbor Reads Aloud."

18.     The publication's angle, shaped by the District board members' information, including of then non-member Rooks, was that Plaintiff grooms children's sexuality.

19.     The publication also printed Desert Harbor's response to Plaintiff's email. Desert Harbor's response, which was sent to all parents and printed in the publication stated:

> Today you may see a screenshot on social media of an email that was recently sent by one of our staff members regarding personal views on International Transgender Day of Visibility. While the message may get increased attention in our community, it was important to me that you know that the email was only sent to our staff and not to students or parents.
>
> At Desert Harbor we pride ourselves on using our limited resources to directly support teaching and learning. Please know that not all messages you see posted are a representation of our school or district.

20.     On April 8, 2022, the District's human resources officer, Laura Vesely, ordered Plaintiff not to return to work pending further communication from human resources. On April 11, Vesely informed Plaintiff that they were being placed on administrative leave pending an investigation.

21.     The District failed to provide notice to Plaintiff of the accusations against them or the basis of the investigation, other than saying that human resources was investigating two instances of alleged unprofessional conduct.

22.     Vesely went on to interview Plaintiff and many other individuals. Other than this interview, Vesely did not communicate any additional information to Plaintiff, despite Plaintiff's requests by phone and email to Vesely for information on the accusations against them.

23.     At the same time of the investigation and thereafter, Defendants Rooks and Hill embarked on a smear campaign against Plaintiff. They publicly referred to Plaintiff as a child "groomer" and accused them of sexualizing children and pursuing an activist agenda through their work, among other false and disparaging claims.

24.     Hill was a governing board member as of the March 31 Email and when she made the false and disparaging comments about Plaintiff. Hill spoke both in a personal and in her official capacity as a governing board member. Hill went on to resign from the board on or about August 24, 2023, but not without inflicting further damage on Plaintiff before departing, as explained below.

25.     Rooks was not a governing board member as of the March 31 Email, but Rooks sought office with the governing board with the intent to terminate Plaintiff's employment. Rooks was elected to the governing board on November 8, 2022, and took office on January 1, 2023. Rooks made the false and disparaging comments prior to and since taking office, both in her personal and official capacity.

26.     For example, on April 7, 2022, Rooks posted in her social media account, X f/k/a Twitter, Plaintiff's March 31 Email, including identifying Plaintiff by name, and demanded that Plaintiff "[s]top sexualizing OUR children!" (Emphasis in original.)



27.     Also on April 7, Rooks held a so-called prayer vigil to pray against Plaintiff and condemn Plaintiff's March 31 Email. Rooks thanked an unnamed individual for sharing the March 31 Email with her, confirming her communications with others about Plaintiff. Rooks criticized Plaintiff's "ideology" and opened the floor for others in attendance to disparage Plaintiff as well.

28.     Following Rooks' lead, several other individuals criticized Plaintiff and the March 31 Email, and called on the District to issue consequences to Plaintiff.

29.     At the end of the prayer vigil, Rooks urged the attendees to also attend the next board meeting, which was scheduled for April 14, 2022, and speak up against Plaintiff.

30.     On April 14, the General Counsel for the Arizona Education Association ("AEA"), Jarrett Haskovec, wrote to the District's attorney, notifying the District of the violent threats and harassment Plaintiff had endured in the wake of the District's investigation, and requesting that the District comply with its legal obligations under Title VII of the Civil Rights Act of 1964.

31.     On April 14, prior to the board meeting, Rooks and Hill publicly disparaged Plaintiff and urged people to attend the board meeting to speak against Plaintiff.

32.     Rooks went on various social media platforms and public places to request "prayers" against Plaintiff. Rooks went as far as to disclose Plaintiff's address. As a result, at approximately 1:50PM on April 14, a rock was thrown at Plaintiff's residence causing damage to the window. A police complaint was filed.

33.     As instructed by Hill and Rooks, individuals who attended the April 14 board meeting made disparaging public comments about Plaintiff.

34.     On April 29, 2022, Rooks went on social media to chastise Plaintiff for their gender identity, as follows:

//

//

//

//

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13



14

15    35.    On June 21, 2022, Vesely notified Plaintiff that they were no longer under

16    investigation and that they could return to work with the start of the new school year, on

17    or about July 1, 2022.

18    36.    The District never issued written findings or a resolution of the allegations

19    under investigation. However, when Vesely informed Plaintiff that they could return to

20    work, Vesely also informed Plaintiff that Plaintiff had not violated laws or District policy

21    and ordered Plaintiff to refrain from using the District's computer for personal use.

10

37.     The District's action of placing Plaintiff on long term administrative leave without notice of the accusations against them and humiliating Plaintiff by interviewing many of Plaintiff's colleagues, all while under public condemnation instigated by Hill and Rooks, and forbidding Plaintiff's computer use as had been used before and continues to be used by other employees outside of Plaintiff's protected class, is an adverse employment action.

38.     During the time of the investigation and upon their return to work, Plaintiff's home was vandalized, as stated above, and they also received repeated harassing phone calls, emails, and social media messages accusing them of pedophilia and grooming children for sexual conduct—the same words used by the board members.

39.     On July 27, 2022, soon after Plaintiff's reinstatement, someone once again vandalized Plaintiff's residence by, again, throwing a rock at a window. A police complaint was filed.

<u>March 9, 2023, Board Meeting</u>

40.     Still intent to harm Plaintiff after they were allowed to return to work, Rooks and Hill planned to terminate Plaintiff's employment by refusing to renew their employment contract.

41.     The renewal of teachers' contracts was on the agenda for the governing board set for March 9, 2023.

42.     Prior to the board meeting that same day, Rooks, through her nonprofit organization, West Valley Parents United ("WVPU"), posted on social media that

Plaintiff's contract was up for renewal with additional disparaging remarks, as shown below.



43.     It was no secret that Rooks used her organization as a front to further disparage Plaintiff.

44.     During the March 9 board meeting, Hill accused Plaintiff of not fulfilling their duties, not keeping students safe, being a danger to students, and not following policies.

45.     Hill motioned to remove Plaintiff's name from the contract renewal list to prohibit the renewal of their contract.

46.     Rooks commented that she agreed with the comments made by Hill and that Plaintiff failed to meet Rooks' expectations. Rooks seconded Hill's motion to remove Plaintiff from the list of contract renewals.

47.     By a vote of 2, in favor of removal of Plaintiff from the renewal list, and 3 opposed, the motion failed.

48.     During the public comment portion of the March 9 board meeting, members of the public repeated the same false and disparaging comments about Plaintiff that Rooks and Hill had been making for the past year.

49.     Upon information and belief, Rooks and Hill were advised by the District's legal counsel that it is unlawful to discriminate or retaliate against someone due to their gender or gender identity.

50.     During the March 9 board meeting, District counsel reminded the board members that Arizona law and District policy prevented the Board from not renewing Plaintiff's teaching contract in the manner and for the reasons Hill and Rooks proposed. Being fully admonished, Rooks and Hill insisted on attacking and disparaging Plaintiff.

51.     The board members' motives for terminating Plaintiff's employment and the manner the board members attempted to do so amounted to an adverse employment action.

Continuing Attacks

52.     The District has never taken any steps to stop the attacks on Plaintiff that ensued after the March 31 Email and continue to date.

53.     These attacks occurred in the workplace, including during District board meetings, and on Desert Harbor property.

54.     As evidenced by the social media posts and media publications mentioned above, and those not cited herein, Plaintiff's emails and pictures were widely disseminated to further the attacks and harassment against Plaintiff.

55.     The attacks in the community and in media publications, led by both Rooks and Hill, also filtered into the workplace or emanated from the workplace.

56.     Additional examples of the hostilities and harassment experienced by Plaintiff since the March 31 Email and continuing to date include a fellow teacher, Cheryl Lindquist, consistently and intentionally refusing to refer to Plaintiff by they/them pronouns and referring to Plaintiff as Sarah on the basis of Plaintiff's gender identity. Another substitute teacher took pictures of Plaintiff's door sign that identified them with the honorific "Mx."  The taking of the picture was harassment and, upon information and belief, the picture was taken to further the harassment.

57.     Additionally, throughout the Fall 2023 school semester, Plaintiff's vehicle was vandalized in Desert Harbor's secured parking lot, including damaging the back of the car, slashing the tires, and ripping off pro-LGBTQ stickers. These events occurred in August, September, and October of 2023. Police reports were filed.

58.     Plaintiff reported the harassment from coworkers and the damage to their vehicle to human resources, including during a meeting with human resources personnel, but the District to date has failed to respond and remedy the harassment.

59.     The relentless attacks against Plaintiff for their gender identity—those instigated by Rooks and Hill, the staff members who repeatedly insulted Plaintiff while at work and promulgated information about Plaintiff to the community and to board members to be used for further attacks, and the threatening attacks on Plaintiff's residence—caused severe emotional distress that Plaintiff attempted suicide in August 2022.

<u>Disparate Treatment</u>

60.     The District has treated Plaintiff differently than employees outside of Plaintiff's protected class.

61.     Given the timing of the investigation and considering Vesely's admonishment to Plaintiff that they refrain from using the District's computer for personal emails, clearly one of the instances of alleged unprofessional conduct is Plaintiff's March 31 Email.

62.     Further, considering the media publication that shamed Plaintiff for having read "Pink is for Boys" to students, quoting a board member that Plaintiff was sexualizing children, the other alleged misconduct is Plaintiff reading the book.

63.     There are many instances of staff using District computers and email accounts to send non-school messages, such as an email message sent one day prior to

15

Plaintiff's March 31 Email, in which a staff member promoted National Pet Day and encouraged staff to email pictures of themselves and their pets on school computers and accounts. The District has not restricted others in the use of school computers and email accounts for non-school purposes.

64.     Also, other teachers have not been investigated for the books they read to the students.

<u>Administrative Remedies</u>

65.     Plaintiff has exhausted their administrative remedies under Title VII of the Civil Rights Act of 1964 with the Equal Employment Opportunity Commission ("EEOC") and brings this lawsuit within the time requirements of the EEOC's Notice of Right to Sue.

**CLAIMS**

**Count 1**
**Disparate treatment because of sex in violation of**
**the Civil Rights Act of 1967 (Title VII), 42 U.S.C. § 2000e-2(a)**
**Against the District**

66.     Plaintiff incorporates the allegations set forth above as though fully set forth herein.

67.     It is an unlawful employment practice for an employer to discriminate against any individual with respect to terms, conditions, or privileges of employment because of the individual's sex. 42 U.S.C. § 2000e-2(a).

68.    "Because of sex" includes discriminating against an individual for being homosexual or being a transgender person. *See Bostock v. Clayton County, Georgia*, 590 U.S. 644, 649 (2020).

69.    Plaintiff belongs to a protected class—they are transgender.

70.    At all material times, the District subjected Plaintiff to adverse employment actions because of Plaintiff's gender identity.

71.    The District treated Plaintiff differently than other similarly situated employees outside of Plaintiff's protected class.

72.    At all material times, the District discriminated against Plaintiff with respect to their terms and conditions of employment by, including but not limited to, placing Plaintiff on administrative leave, engaging in a protracted and humiliating investigation, prohibiting Plaintiff's use of the District's computer and email account, and attempting to terminate Plaintiff.

73.    The District's only reason for subjecting Plaintiff to discrimination was because of Plaintiff's gender identity.

74.    The words and actions of the District and the District's board members constitute direct evidence of discriminatory intent on the part of the District.

75.    In addition, all of the facts constitute circumstantial evidence of discriminatory intent on the part of the District.

76.     As a result of these violations, Plaintiff has suffered humiliation, distress, loss of enjoyment of life, reputational harm, and inconvenience, for which Plaintiff is entitled to pecuniary and nonpecuniary compensatory damages.

**Count 2**
**Hostile Work Environment in violation of**
**the Civil Rights Act of 1967, 42 U.S.C. § 2000e-2(a)**
**Against the District**

77.     Plaintiff incorporates the allegations set forth above as though fully set forth herein.

78.     It is an unlawful employment practice for an employer to discriminate against any individual with respect to terms, conditions, or privileges of employment, including by having created or maintained a hostile work environment, because of the individual's sex. 42 U.S.C. § 2000e-2(a).

79.     Sex-based harassment becomes unlawful when the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

80.     At all material times, the District discriminated against Plaintiff by creating and maintaining a hostile work environment for them, including by but not limited to, sanctioning a protracted and humiliating investigation, allowing board members to publicly disparage Plaintiff and accuse them of sexually grooming children, allowing board members to incite harassment and violence against Plaintiff both in and out of school grounds and during board meetings, and allowing colleagues to harass Plaintiff, based on and because of Plaintiff's gender identity.

81.     The District is also responsible for the hostilities and harassment inflicted by non-employees and non-board members because they were related to Plaintiff's employment and contributed to the hostile work environment.

82.     The hostile work environment was objectively severe or pervasive in that it was a work environment that a reasonable person would find hostile and abusive.

83.     That conduct was unwelcomed.

84.     That conduct was sufficiently severe and pervasive as to alter the conditions of Plaintiff's employment and create an abusive working environment.

85.     That conduct was so objectively extreme as to amount to a change in the terms and conditions of Plaintiff's employment.

86.     Plaintiff did in fact subjectively perceive the environment as being hostile and abusive.

87.     Plaintiff complained about the hostile and abusive conduct, and the abuse was publicly known, but the District failed to acknowledge their complaints and failed to address the conduct.

88.     The District created and maintained such an environment based on and because of Plaintiff's gender identity.

89.     As a result of these violations, Plaintiff has suffered humiliation, distress, loss of enjoyment of life, reputational harm, and inconvenience, for which Plaintiff is entitled to pecuniary and nonpecuniary compensatory damages.

**Count 3**
**Violation of the Education Amendments of 1971 (Title IX), 20 U.S.C. § 1681**
**Against the District**

90.     Plaintiff incorporates the allegations set forth above as though fully set forth herein.

91.     Title IX of the Education Amendments of 1972 prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of federal financial assistance from the United States Department of Education. 20 U.S.C. § 1681, 34 C.F.R. Part 106.

92.     Title IX applies to the District as a public school receiving federal funds. 20 U.S.C. § 1681(c).

93.     Program or activity means all the operations of the District. 34 C.F.R. § 106.2

94.     Plaintiff has a right to bring a private cause of action for violations of Title IX, *see Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979), without having to exhaust administrative remedies, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009).

95.     The abusive and hostile work environment discussed in the prior claims also constitute discrimination against Plaintiff because of their gender identity in violation of Title IX.

96.     Plaintiff complained about the abuse and hostilities to the District, and the abuse and hostilities were publicly known to the District, but the District failed to respond and prevent further harassment from happening.

97.     To date, the harassment and discrimination continue, as colleagues refuse to recognize Plaintiff's gender identity and continue to refer to Plaintiff as Sarah and refer to them with her/she pronouns.

98.     Plaintiff has complained to the District about this, and the District knows about this harassment, but fails to respond and remedy the harassment.

99.     Because of these violations, Plaintiff is entitled to compensatory damages and injunctive relief. *See Fitzgerald,* 555 U.S. at 255.

**Count 4**
**Unlawful Retaliation Under the First Amendment,**
**Freedom of Speech, pursuant to 42 U.S.C. § 1983**
**Against the District,**
**Rebecca Hill and Heather Rooks**

100.    Plaintiff incorporates the allegations set forth above as though fully set forth herein.

101.    Plaintiff's speech in the March 31 Email was not related to their job duties or responsibilities nor was it a work-related grievance.

102.    Rather, Plaintiff's speech in the March 31 Email was a statement on matters of public concern that Plaintiff undertook as a private citizen, speech that is protected under the First Amendment.

103.    Plaintiff's speech was about transgender rights, including pending legislation and a presidential proclamation on the subject, and the International Transgender Day of Visibility which is celebrated on March 31.

104.   "[T]he state may not abuse its position as employer to stifle 'the First Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of public interest.'" *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1066 (9th Cir. 2013) (citations omitted).

105.   Pursuant to 42 U.S.C. § 1983, Defendants acted under color of state when they subjected Plaintiff to retaliation for their protected speech and deprived them of rights and privileges secured by the Constitution and laws.

106.   Defendants retaliated against Plaintiff by conducting a protracted and humiliating investigation into their protected speech.

107.   Defendants retaliated against Plaintiff by attempting to terminate them because of their protected speech.

108.   Defendants lacked adequate justification for treating Plaintiff differently than members of the general public.

109.   Defendants' actions chill, deter, and restrict Plaintiff from freely expressing their views.

110.   As a result of these violations, Plaintiff has suffered humiliation, distress, loss of enjoyment of life, reputational harm, and inconvenience, for which Plaintiff is entitled to pecuniary and nonpecuniary compensatory damages.

111.   Plaintiff is also entitled to nominal damages.

112.   Defendants Hill's and Rooks' actions were grossly and wantonly negligent or reckless, entitling Plaintiff to punitive damages.

**Count 5**
**Viewpoint Discrimination Under the First Amendment,**
**Freedom of Speech pursuant to 42 U.S.C. § 1983**
**Against the District**

113.    Plaintiff incorporates the allegations set forth above as though fully set forth herein.

114.    "Viewpoint discrimination occurs when the government prohibits speech by particular speakers, thereby suppressing a particular view about a subject." *United Food & Commer. Workers Local 99 v. Bennett*, 934 F. Supp. 2d 1167, 1182-83 (D. Ariz. 2013).

115.    The District launched an investigation into Plaintiff's protected speech in the March 31 Email and into Plaintiff's reading "Pink is for Boys" to students.

116.    The District then imposed a rule on Plaintiff to refrain from using the District's computer and electronic mail for "personal reasons."

117.    The District imposed such rule on Plaintiff because of the viewpoint in Plaintiff's speech, that of advocacy and support for transgender rights.

118.    The District allows the use of its computers and email systems for non-school business.

119.    The District does not restrict other employees who use the District's computers and email systems to communicate messages about causes or organizations they support.

120.    The District also does not launch investigations into the books read by other teachers that transmit different viewpoints to students.

121.    The District engaged in these actions against Plaintiff's because of the viewpoint in their speech.

122.    As a result of these violations, Plaintiff has suffered humiliation, distress, loss of enjoyment of life, reputational harm, and inconvenience, for which Plaintiff is entitled to pecuniary and nonpecuniary compensatory damages.

123.    Plaintiff is also entitled to nominal damages.

**Count 6**
**Violation of Free Speech**
**Under the Arizona Constitution**
**Against the District,**
**Rebecca Hill and Heather Rooks**

124.    Plaintiff incorporates the allegations set forth above as though fully set forth herein.

125.    The Arizona Constitution guarantees all citizen a right to freely speak, write, and publish on all subject, being responsible for the abuse of that right. Az Const. art. 2, § 6.

126.    Defendants have violated these rights through its conduct of investigating Plaintiff's free speech activities, allowing board members and staff to disparage and abuse Plaintiff, allowing board members to encourage others to disparage and abuse Plaintiff, and attempting to terminate Plaintiff's employment.

127.    As a result of these violations, Plaintiff has suffered humiliation, distress, loss of enjoyment of life, reputational harm, and inconvenience, for which Plaintiff is entitled to pecuniary and nonpecuniary compensatory damages.

128.   Plaintiff is also entitled to nominal damages.

129.   Defendants Hill and Rooks were acting under color of state when they engaged in the above conduct.

130.   Defendants Hill's and Rooks' actions were grossly and wantonly negligent or reckless, entitling Plaintiff to punitive damages against them.

**Count 7**
**False Light Invasion of Privacy**
**Against the District,**
**Rebecca Hill and Heather Rooks**

131.   Plaintiff incorporates the allegations set forth above as though fully set forth herein.

132.   False light invasion of privacy occurs when "(1) the defendant, with knowledge of falsity or reckless disregard for the truth, gave publicity to information placing the plaintiff in false light, and (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person in the plaintiff's position." *Desert Plam Surgical Group, P.L.C. v. Petta*, 263 Ariz. 568, 580 (App. 2015).

133.   Defendants Hill and Rooks, in their official and personal capacities, have been engaging in false light invasion of privacy against Plaintiff since March 2022, after learning of Plaintiff's March 31 Email.

134.   Since then, Defendants Hill and Rooks have cast Plaintiff as a danger to children and a sexual groomer.

135.   Hill and Rooks have made the same or similar statements on social media and/or to media outlets for publications that also cast Plaintiff in false light.

136.     Hill's and Rooks' conduct constitutes a wrong that continued through the March 9, 2023, board meeting.

137.     At the March 9, 2023, board meeting, Hill and Rooks attempted to terminate Plaintiff's employment by making a motion to not renew Plaintiff's contract.

138.     In support of their motion, Hill and Rooks restated the false light statements against Plaintiff that they had been making for the past year: that Plaintiff is a danger to students and does not keep students safe, that Plaintiff is not a leader or role model to students, that Plaintiff does not fulfill their obligations and violates school policies, and that Plaintiff is not good for the District.

139.     Many District families and community members were at the board meeting.

140.     People in attendance repeated the same or made similar statements against Plaintiff because of the false light cast on Plaintiff.

141.     The board meetings are recorded and remain on the District's public YouTube channel for anyone to see at any time well into the future.

142.     Hill's and Rooks' comments are grounded in the stereotypes that transgender people are sexual predators, unsafe to be around children.

143.     These are lies were created and disseminated by Hill and Rooks.

144.     Hill's and Rooks' conduct and statements were outrageous and constitute false light invasion of Plaintiff's privacy.

145.    All Defendants, through the official actions of board members Hill and Rooks, have cast Plaintiff in false light during board meetings, namely the March 9, 2023, board meeting.

146.    As a result of their conduct, Plaintiff has suffered humiliation, distress, loss of enjoyment of life, reputational harm, and inconvenience, for which Plaintiff is entitled to pecuniary and nonpecuniary compensatory damages.

147.    In addition, Hill's and Rooks' actions were grossly and wantonly negligent or reckless, entitling Plaintiff to punitive damages against them.

**Count 8**
**Intentional Infliction of Emotional Distress**
**Against the District,**
**Rebecca Hill and Heather Rooks**

148.    Plaintiff incorporates the allegations set forth above as though fully set forth herein.

149.    Intentional infliction of emotional distress is committed when (1) the conduct by the defendant is extreme and outrageous, (2) the defendant intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from his conduct, and (3) plaintiff suffered emotional distress as a result of defendant's conduct. *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43 (1987).

150.    Defendants Hill and Rooks, in their official and personal capacities, have been engaging in false light invasion of privacy against Plaintiff since March 2022, after learning of Plaintiff's March 31 Email.

151.     In the course of a year, beginning in March 2022, Hill and Rooks instigated District and non-District community members to harass, threaten, and ridicule Plaintiff at work and at their home by referring to Plaintiff as a danger to children and a sexual groomer of children.

152.     Hill and Rooks also went on social media and/or to media outlets to perpetuate their attack campaign against Plaintiff.

153.     Hill's and Rooks' conduct constitutes continued conduct through and up to the March 9, 2023, board meeting in which they attempted to defeat the renewal of Plaintiff's employment contract by repeating the statements they had been making for the past year: that Plaintiff is a danger to students and does not keep students safe, that Plaintiff is not a leader or role model to students, that Plaintiff does not fulfill their obligations and violates school policies, and that Plaintiff is not good for the District.

154.     Hill's and Rooks' conduct was extreme and outrageous.

155.     Hill and Rooks engaged in this conduct with the intent to cause distress or with reckless disregard of the near certainty that such distress would result.

156.     All Defendants, through the official actions of board members Hill and Rooks at the March 9 board meeting, have engaged in the intentional infliction of emotional distress on Plaintiff.

157.     Plaintiff suffered emotional distress so severe that Plaintiff attempted suicide and continues to be under mental health care.

158.   As a result of their conduct, Plaintiff has suffered humiliation, distress, loss of enjoyment of life, reputational harm, and inconvenience, for which Plaintiff is entitled to pecuniary and nonpecuniary compensatory damages.

159.   In addition, Hill's and Rooks' actions were grossly and wantonly negligent or reckless, entitling Plaintiff to punitive damages against them.


WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants and provide the following relief:

A.   Declare that Defendants have violated Plaintiff's constitutional rights and their rights under Title VII and Title IX.

B.   Award Plaintiff compensatory damages against Defendants for pecuniary losses, reputational harm, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, as available under federal and state statutes, including 42 U.S.C. § 2000e-5(e)(3)(B), (g)(1), and 42 U.S.C. § 1981a, and common law, in an amount to be proven at trial.

C.   Award Plaintiff punitive damages against Defendants Hill and Rooks available under federal and state statutes, including 42 U.S.C. § 1981a, and common law, in an amount to be proven at trial.

D.   Award Plaintiff nominal damages for the violations of their constitutional rights.

E.    Grant all available injunctive relief against all defendants. 28 U.S.C. §§ 2201, 2202; A.R.S. § 12-1831.

F.    Award Plaintiff reasonable attorneys' fees and costs available under any applicable rule, statute, or common law, including 42 U.S.C. § 2000e-5(k), FRCP Rule 54(d), LRCiv 54.1 and 54.2, 28 U.S.C. § 1920; A.R.S. § 12-348(A)(7).

G.    Any other relief the Court deems just and proper.

**Jury Trial Demand**

Plaintiff demands a jury trial on all claims and issues set forth herein.

DATED this 8th day of March 2024.

BARTON MENDEZ SOTO PLLC

_____
Jacqueline Mendez Soto