**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| River Chunnui, | No. CV-24-00503-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Peoria Unified School District, et al., | |
| Defendants. | |

Pending before the Court are (1) Defendant Peoria Unified School District's Motion for Partial Dismissal (Doc. 13), and (2) Defendants Heather Rooks and Rebecca Hill's Motion to Dismiss (Doc. 12). The Motions are fully briefed. (Docs. 16, 17, 18, 21.) The Court held oral argument on November 20, 2024. For the reasons that follow, the Court will grant Peoria's Motion and will grant Rooks and Hill's Motion in part and deny it in part.

**I.   BACKGROUND**

   **A.   The Parties**

Plaintiff River Chunnui is a transgender person who uses they and them pronouns. (Doc. 1 ¶ 5.) At all relevant times, Plaintiff was employed as a fourth and fifth grade special education teacher at Desert Harbor Elementary School, a public school in Peoria, Arizona. (*Id.* ¶¶ 9-10.)

Defendant Peoria Unified School District ("Peoria") is a public school district in Arizona, serving over 36,000 students. (*Id.* ¶ 6.) As alleged in the Complaint, Peoria is

managed by a Governing Board (the "Board"), consisting of five members who are elected to four-year terms. (*Id.*) Defendant Rebecca Hill was elected to the Board on November 3, 2020. (*Id.* ¶ 8.) Defendant Heather Rooks was elected to the Board on November 8, 2022 and assumed office on January 1, 2023. (*Id.* ¶¶ 7, 25.) Hill served as a Board member until approximately August 24, 2023, when she resigned. (*Id.* ¶ 24.)

### B.  Factual Background

The events giving rise to this lawsuit began on March 31, 2022, when Plaintiff sent an email to their fellow Desert Harbor employees (the "March 31 Email"), wherein, Plaintiff stated:

> Hello Fabulous Staff,
>
> I just wanted to let you know that you may see our students wearing more pink, teal, and white today. Today is a quickly growing annual event called "International Transgender Day of Visibility." Our President is expected to make some announcements today on new legislation to protect the rights of Trans students, any many of our students have taken a keen interest in these legislative movements.
>
> How can you help? If you notice a student purposefully wearing the colors of the trans flag, a simple "I see you" or "I support you" can go a long way.
>
> Thank you fabulous staff!

(*Id.* ¶ 12.)

The email was circulated online the following week, and on April 8, 2022, Plaintiff was told by Peoria's human resources officer, Laura Vesely, that they should not return to work. (*Id.* ¶¶ 20, 26.) Shortly thereafter, Vesely informed Plaintiff that they were being placed on administrative leave pending an investigation for two alleged instances of unprofessional conduct. (*Id.* ¶¶ 20-21.) During this time, Plaintiff alleges that Rooks and Hill engaged in a "smear campaign" against Plaintiff, where they publicly condemned Plaintiff as a child groomer and accused them of sexualizing children. (*Id.* ¶ 23.) Plaintiff alleges Rooks posted the March 31 Email on her social media account, organized a prayer vigil, and encouraged others to attend the Board's upcoming meeting to "speak up against Plaintiff." (*Id.* ¶¶ 26-29.)

On June 21, 2022, Vesely informed Plaintiff they were no longer under investigation and Plaintiff could resume teaching at the start of the new school year. (*Id.* ¶ 35.) Vesely also advised Plaintiff they should refrain from using Peoria's computer for personal use. (*Id.* ¶ 36.) Plaintiff alleges that over the course of the following school year, they were subject to harassment and discrimination because Peoria failed to address Plaintiff's complaints, and Defendants' public disparagement of Plaintiff led to their home and car being vandalized. (*Id.* ¶¶ 32, 37-39, 57.)

Plaintiff further alleges that after Rooks joined the Board, she collaborated with Hill to terminate Plaintiff's employment by refusing to renew their contract at the March 9, 2023 board meeting. (*Id.* ¶¶ 40-41.) During the meeting, Hill motioned to remove Plaintiff's name from Peoria's contract renewal list, and Rooks seconded the motion. (*Id.* ¶¶ 44-46.) The board members were informed by Peoria's counsel that not renewing Plaintiff's contract for the reasons Rooks and Hill proposed would violate Arizona law and Peoria's policies. (*Id.* ¶ 50.) The motion failed because the remaining three board members voted in opposition. (*Id.* ¶ 47.) Plaintiff asserts that the attacks against them persist, and Peoria has made no effort to stop them. (*Id.* ¶¶ 52-59.)

  **C.**  **Procedural Background**

Plaintiff filed suit on March 8, 2024, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), Title IX of the Education Amendments of 1971 ("Title IX"), the First Amendment, free speech under the Arizona State Constitution, and Arizona tort law. (*Id.* ¶¶ 66-159.) Defendants now move to dismiss the claims asserted against them. (Docs. 12, 13.)

**II.**  **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A court may dismiss a complaint "if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir.

2011) (internal quotations and citation omitted). A complaint must assert sufficient factual allegations that, when taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Plausibility is more than mere possibility; a plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When analyzing the sufficiency of a complaint, the well-pled factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

## III.  DISCUSSION

### A.  Judicial Notice

Rooks and Hill seek judicial notice of the Notice of Claim Plaintiff submitted to Defendants on July 13, 2023. (Doc. 12-1.) "Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A court may properly "take judicial notice of matters of public record." *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001); *see also* Fed. R. Evid. 201(b) (permitting courts to take judicial notice of "adjudicative fact[s]" that are "not subject to reasonable dispute," meaning the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

Under Arizona law, a "Notice of Claim is a public record." *Phoenix Newspapers, Inc. v. Ellis*, 215 Ariz. 268, 272 (App. 2007). Plaintiff does not appear to oppose the request, nor does Plaintiff contest the document's authenticity. (*See* Docs. 16, 17.) This court has previously found judicial notice of a notice of claim is proper. *See, e.g.*, *Hasbrouck v. Yavapai Cnty.*, No. CV-20-08112-PCT-DWL, 2021 WL 321894, at *1 n.3 (D. Ariz. Feb. 1, 2021); *SolarCity Corp. v. Salt River Project Agric. Improvement*, No. CV-15-00374-

PHX-DLR, 2015 WL 6503439, at *3 (D. Ariz. Oct. 27, 2015); *Pataky v. City of Phoenix*, No. 2:09-CV-0534-HRH, 2009 WL 10673403, at *4 n.9 (D. Ariz. Oct. 30, 2009), *reconsidered on other grounds*, No. 2:09-CV-0534-HRH, 2009 WL 10673382 (D. Ariz. Nov. 20, 2009). Therefore, the Court will take judicial notice of Plaintiff's Notice of Claim.[1]

### B.  Peoria's Motion to Dismiss

#### 1.  Count 1: Title VII

In Count 1, Plaintiff alleges they were a victim of discrimination based on sex in violation of Title VII. (Doc. 1 ¶¶ 66-76.) Peoria argues that Count 1 should be dismissed in part because Plaintiff did not timely file a charge with the Equal Employment Opportunity Commission ("EEOC") on the claim that the April 2022 administrative leave and investigation through June 2022 were discriminatory acts. (Doc. 13 at 4-5.)

Before seeking relief under Title VII, a plaintiff must exhaust the administrative remedies available under 42 U.S.C. § 2000e-5 by filing a charge with the EEOC. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008). If the unlawful employment practice is charged against a state or local authority authorized to seek or grant relief, as is the case here, the charge must be filed within 300 days after the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). The Ninth Circuit treats the "notice requirement as a statute of limitations." *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 675 (9th Cir. 1988).

The parties do not dispute that Plaintiff filed a charge of discrimination with the EEOC on July 25, 2023. (*See* Docs. 13, 16.) As such, Peoria argues that any events occurring before September 29, 2022—300 days before Plaintiff's charge—are time-barred and cannot support Plaintiff's Title VII claim. (Doc. 13 at 5.) This includes the administrative leave Plaintiff was placed on in April 2022 and the investigation that

---

[1] The Court notes that it will not take judicial notice of matters within the Notice of Claim that are disputed, such as whether Defendants' actions violated Plaintiff's constitutional and statutory rights. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[A] court cannot take judicial notice of disputed facts contained in such public records.").

concluded on June 21, 2022. (*Id.*) Plaintiff argues that these events are not time-barred under a "continuing violation" theory. (Doc. 16 at 2-4.) According to Plaintiff, Peoria's actions from April 2022 through March 2023 were part of a "continuing violation" of Title VII. (*Id.*) Plaintiff relies on *Sosa v. Hiraoka*, 920 F.2d 1451 (9th Cir. 1990), to support their assertion that "[a]llegations of conduct occurring prior to the cut-off period for filing an EEOC charge are not time barred if a plaintiff can show that they are part of a continuing violation." (*Id.* at 4.)

While the Ninth Circuit previously recognized two applications of the continuing violations doctrine—the "serial acts" and "systemic" branches—the doctrine was significantly curtailed in 2002 after the United States Supreme Court decided *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).[2] In *Morgan*, the Court held "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. In other words, a plaintiff cannot recover for discrete acts of discrimination or retaliation occurring outside the limitations period. *Id.* Since *Morgan*, the Ninth Circuit has applied its reasoning to abrogate precedent under both "continuing violations" branches, such that "little remains of the continuing violations doctrine." *See Bird*, 935 F.3d at 748. As Peoria correctly notes, however, the continuing violation theory applies to hostile work environment or class-wide pattern-or-practice claims—not disparate treatment claims as Plaintiff alleges here.[3] *Cherosky v. Henderson*, 330 F.3d 1243, 1246-47 (9th Cir. 2003) (discussing *Morgan* and declining to treat a series of related employment decisions as a pattern or practice, instead finding that each decision was a discrete act).

A discrete discriminatory act occurs "on the day that it happen[s]." *Morgan*, 536

---

[2] The "serial acts" branch allows consideration of events outside the limitations period if part of "a series of related acts," and the "systemic" branch permits considerations of events or conduct undertaken to maintain a discriminatory system. *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 747 (9th Cir. 2019).

[3] *See Morgan*, 536 U.S. at 115-17 (explaining that hostile work environment claims are distinguishable because "[s]uch claims are based on the cumulative effect of individual acts" and "cannot be said to occur on any particular day").

- 6 -

U.S. at 110, 114 (explaining that "discrete acts" include "termination, failure to promote, denial of transfer, or refusal to hire") (cleaned up). Peoria's grant of administrative leave and investigation of Plaintiff were discrete, purportedly discriminatory acts that occurred over 300 days before July 25, 2023. These events, therefore, are no longer actionable. The Court will grant Peoria's motion to partially dismiss Count 1.

### 2. Counts 4 and 5: First Amendment Claims

Peoria also moves to dismiss Count 4, a Section 1983 claim for retaliation in violation of the First Amendment, and Count 5, a Section 1983 claim for viewpoint discrimination in violation of the First Amendment. (Doc. 13 at 5-6.) Section 1983 prohibits "every person" acting under color of law from violating the constitutional or legal rights of others. 42 U.S.C. § 1983. In *Monell v. Department of Social Services of New York*, the United States Supreme Court held that the word "person" in Section 1983 includes municipalities and other governing bodies, such as school districts, only under specific, limited situations. 436 U.S. 658, 690 (1978). The most recognized way to plead a Section 1983 claim against a school district is to allege: (1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy, custom, or practice that amounted to deliberate indifference to the plaintiff's constitutional right; and, (3) that the policy, custom, or practice was the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

Peoria argues that dismissal is warranted because Plaintiff has not alleged that Peoria had a policy, practice, or custom that caused Plaintiff's constitutional rights to be violated. (Doc. 13 at 5-6.) Plaintiff impliedly concedes this point, arguing instead that "[t]here are other ways to establish liability" such as by alleging that Peoria delegated its policymaking authority or that its policymakers ratified the unconstitutional conduct. (Doc. 16 at 5-7.)

Plaintiff is correct. Liability under *Monell* may arise in other circumstances. As noted by Peoria, a local authority may be liable under *Monell* "when implementation of its

official policies or established customs inflicts the constitutional injury." *Monell*, 436 U.S. at 708 (Powell, J., concurring). But liability may also attach "when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. Cnty of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (cleaned up).

Plaintiff argues that Arizona law and Peoria's internal policies vest policymaking authority in the Governing Board and Superintendent. (Doc. 16 at 5-6.) Under this alternative basis for *Monell* liability, Plaintiff asserts one could find "that the board and/or the superintendent" delegated their authority "to chief personal officer, Laura Vesely." (*Id.*) And therefore, when Vesely placed Plaintiff on administrative leave, investigated Plaintiff, allegedly failed to address Plaintiff's harassment complaints, and discriminately applied Peoria's electronic communications and personal use policy, those actions constituted the policy of Peoria. (*Id.*) But the only allegations to support this theory of liability are the arguments set forth in Plaintiff's opposition brief. The Complaint lacks any well-pled allegation that the Board and Superintendent *could* delegate their policymaking authority, nor that they *did*, in fact, delegate such authority to Vesely. Therefore, the Complaint fails to set out plausible Section 1983 claims against Peoria on this basis.

Alternatively, Plaintiff argues that if Vesely is not deemed to possess policymaking authority, the allegations in the Complaint support the conclusion that "the Board and Superintendent ratified her acts." (*Id.* at 6-7.) According to Plaintiff, the Board ratified Vesely's actions because it was "vehemently opposed to Plaintiff's protected speech." (*Id.* at 7.) While the Complaint alleges Rooks opposed Plaintiff's speech and ideology, these allegations largely reference Rooks' actions *before* joining the Board. And as to the few allegations relating to Rooks and Hill as Board members, Plaintiff has not alleged that two board members alone could "ratify" the conduct of a school personnel employee under Arizona law. Nor does Plaintiff allege that mere "opposition" to a teacher's protected speech amounts to ratification. "School boards have only the authority granted by statute

which must be exercised in the mode and within the limits permitted by the statute." *Sch. Dist. No. 69 of Maricopa Cnty. v. Altherr*, 10 Ariz. 333, 338 (App. 1969), *overruled on other grounds by Bd. of Trs. of Marana Elementary Sch., Dist. No. 6 v. Wildermuth*, 16 Ariz. 171 (App. 1972). Again, the Complaint lacks any well-pled allegations that the Board or Superintendent ratified Vesely's conduct. Therefore, the Court will dismiss Counts 4 and 5 of Plaintiff's Complaint against Peoria.

### 3. Notice of Claim (Counts 6-8)

Peoria also seeks dismissal of Plaintiff's state law claims (Counts 6-8) on the grounds that they are barred by Arizona's Notice of Claim statute. (Doc. 13 at 6-8.)

Arizona law requires a plaintiff suing "a public entity, public school, or public employee" to first file a notice of claim "within one hundred eighty days after the cause of action accrues." A.R.S. § 12-821.01(A). A notice is proper if it contains (1) a specific amount for which the claim can be settled; (2) facts supporting that specific amount; and (3) sufficient facts to permit the public entity to understand the basis of its liability. *See Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 296 (2007); *Yollin v. City of Glendale*, 219 Ariz. 24, 28 (App. 2008).

The statutory requirement at issue here is that a proper notice must "contain a specific amount for which the claim can be settled." A.R.S. § 12-821.01(A). "This language unmistakably instructs claimants to include a particular and certain amount of money that, *if agreed* to by the government entity, *will settle* the claim." *Deer Valley*, 214 Ariz. at 296 (emphasis added). If the claimant fails to present a compliant settlement offer to the public entity they wish to sue, the claim is barred. *Yahweh v. City of Phoenix*, 243 Ariz. 21, 23 (App. 2017).

Plaintiff's Notice of Claim stated:

> Mx. Chunnui seeks $50,000 from the District and $1,000 from each of Ms. Rooks and Ms. Hill as a full and final settlement of all claims contained in this letter. *To be effectively accepted*, the District, Ms. Rooks, *and* Ms. Hill *must all accept* this apportioned settlement offer.

(Doc. 12-1 at 11 (emphasis added).) Defendants collectively argue that the Notice of Claim

was defective for failing to provide a sum-certain amount for which each Defendant could settle the claim. (Doc. 13 at 6-8; Doc. 12 at 4-6.) By conditioning the settlement on unanimity, Defendants argue that they were foreclosed from investigating and paying a certain sum to resolve the claims against them individually. (*Id.*) In response, Plaintiff contends: (1) the condition is a collateral requirement that does not invalidate the Notice; and (2) alternatively, Defendants should be equitably estopped from seeking dismissal on this basis. (Doc. 16 at 8-10.)

### i. Validity of Notice

Plaintiff relies on *James v. City of Peoria*, 253 Ariz. 301 (2022), and *Donovan v. Yavapai County Community College District*, 244 Ariz. 608 (App. 2018), in support of their argument that the Notice is valid. (*Id.*) In *James*, a mother sued the City of Peoria on behalf of her 12-year-old son who was killed by a vehicle while walking home from school. 253 Ariz. at 278. She served a notice of claim on the City, which provided that the offer to settle was "valid for thirty (30) days." *Id.* This statement, however, contradicted A.R.S. § 12-821.01(E), which gives a public entity or official at least sixty days to accept the settlement. *Id.* The Arizona Supreme Court held that "[a]ny attempt by a claimant to shorten the public entity's statutory sixty-day response period is a legal nullity." *Id.* at 280. But because the notice of claim otherwise comported with the requirements enumerated in A.R.S. § 12-821.01(A), the notice was legally valid, and the plaintiff's error had no legal effect. *Id.* at 279-80.

In *Donovan*, the plaintiff served a notice of claim on Yavapai College, after being fired for reporting mold in one of the college's buildings. 244 Ariz. at 610. The notice asserted claims against the public entity that terminated her employment, the college, and other government officials, and stated she would "accept the sum of $450,000 as full and final settlement." *Id.* The defendants argued the notice was invalid because it set forth a single settlement amount, instead of apportioning the offer amongst defendants. *Id.* at 610-11. The Arizona Court of Appeals upheld the validity of the notice, reasoning that the offer established a sum-certain amount that any defendant could pay to "completely

satisfy its liability." *Id.* at 611 (quoting *Yollin*, 219 Ariz. at 29). The court further reasoned:

> When a claimant demands an amount that the public entity deems unreasonable, nothing prevents the public entity from attempting to negotiate settlement for a lesser amount or from collaborating with other parties to reach a global settlement. But by virtue of a proper notice of claim, the public entity remains assured that, for the specific amount stated (reasonable or otherwise), it can satisfy its liability.

*Id. See also City of Mesa v. Ryan in & for Cnty. of Maricopa*, 557 P.3d 316, 319 (Ariz. 2024) (citing favorably to *Donovan* and stating "[a]ll that is required is that the claimant offer a specific settlement amount that leaves no room for debate about what the public entity must pay to settle the claim").

Drawing on these cases, the narrow question the Court must resolve is whether Plaintiff's condition of unanimity amongst Peoria, Rooks, and Hill is of legal significance, such that it violates a statutory prerequisite to a valid notice of claim. The Court finds it is legally significant, and it violates Arizona law. Arizona's notice of claim statute requires "a specific amount *for which the claim can be settled*" for a notice to be valid. A.R.S. § 12-821.01(A) (emphasis added). *See also Yollin*, 219 Ariz. at 29 ("As long as the claimant states a definite and exact amount, and the government may *completely satisfy* its liability by paying that sum, the claim letter satisfies the sum certain requirement.") (emphasis added); *City of Mesa*, 557 P.3d at 321 (reasoning that the "failure to state an exact monetary figure in the notice of claim as the specific amount for which the claim can be settled raises a strong risk that the claim will be found statutorily noncompliant").

Plaintiff's Notice is unlike the notice challenged in *James* because it contravenes a core statutory prerequisite. Thus, Plaintiff's "effective acceptance" language is not merely an additional condition "of no legal consequence" as Plaintiff asserts. (Doc. 16 at 9.) The facts here are also distinguishable from those presented in *Donovan*. In *Donovan*, the court explained that the notice was valid because each defendant could individually pay the $450,000 to settle the claims against them. 244 Ariz. at 611. But here, there is no amount of money each Defendant could offer to satisfy its liability. In other words, one Defendant could offer the entire $52,000 requested, and the claims against that Defendant would

nonetheless persist if the other two parties refuse to settle. This conclusion is compelled by the express terms of the Notice, which provides: "*To be effectively accepted*, the District, Ms. Rooks, *and* Ms. Hill *must all accept* this apportioned settlement offer." (Doc. 12-1 at 11 (emphasis added).)

Because Plaintiff's Notice contradicts the statutory requirements of A.R.S. § 12-821.01(A), it is invalid. Strict compliance with these requirements is required. *Swenson v. Cnty. of Pinal*, 243 Ariz. 122, 125 (App. 2017) (citing cases). And "no [state-law] action may be maintained in the absence of a notice of claim that complies with the statute." *Humphrey v. State*, 249 Ariz. 57, 63 (App. 2020) (citations omitted) Accordingly, the Court will dismiss Plaintiff's state law claims (Counts 6-8) against Peoria.[4]

### ii.   Equitable Estoppel

Plaintiff argues, in the alternative, that Defendants should be estopped from contesting the validity of the Notice because they did not first raise the defect to Plaintiff. (Doc. 16 at 9-10.) The Notice provided: "Should you have concerns about possible noncompliance with A.R.S. § 12-821.01(A), please immediately contact the undersigned." (Doc. 12-1 at 11.) Because Defendants never raised an issue with the Notice, Plaintiff contends their arguments are now waived. (Doc. 16 at 9-10.)

"The notice of claim statute is subject to waiver, estoppel and equitable tolling." *Jones v. Cochise Cnty.*, 218 Ariz. 372, 379 (App. 2008) (quotations and citations omitted). Equitable estoppel applies if "(1) the party to be estopped intentionally or negligently induces another to believe certain material facts, (2) the induced party takes actions in reliance on its reasonable belief of those facts and (3) the induced party is injured by so relying." *Pueblo Santa Fe Townhomes Owners' Ass'n v. Transcon. Ins.*, 218 Ariz. 13, 21 (App. 2008). Plaintiff, however, points to no facts supporting the notion that Defendants

---

[4] Because the Court will dismiss Plaintiff's state law claims against Peoria, it need not decide Peoria's remaining arguments that the Notice was untimely as to the April 2022 administrative leave and June 2022 investigation (Doc. 13 at 8), nor that Plaintiff's claims for false light invasion of privacy and intentional infliction of emotional distress are barred by applicable statute of limitations (*Id.* at 8-9).

induced Plaintiff to believe their Notice was valid under Arizona law. *See Little v. State*, 225 Ariz. 466, 471 (App. 2010) (finding the trial court did not err in holding the state was not equitably estopped from challenging the validity of the notice because the plaintiff "failed to explain how [the state's] opening a file or allegedly preventing [the defendant] from contacting her should estop the state from relying on the notice-of-claim statute").

As to waiver, Arizona courts have reasoned that a party may waive the defense that a notice is deficient after litigating the claim on its merits or investigating the claim prior to litigation. *Jones*, 218 Ariz. at 379-80. This is because litigious conduct, such as providing disclosure statements, answering interrogatories, or participating in depositions, "is inconsistent with an intention to assert the notice of claim statute as a defense." *Id.* at 380. In this case, however, Defendants raised the defense in their motions to dismiss—which is the procedurally proper time for doing so. *See id.* (explaining that a defendant intends to assert the statute as a defense, and not to waive it, when she "assert[s] the defense immediately"). Therefore, the Court finds Defendants have not waived their notice of claim defense.

**C.  Rooks and Hill's Motion to Dismiss**

**1.  Notice of Claim (Counts 6-8)**

Plaintiff asserts Count 6 against Rooks and Hill in their official capacities and Counts 7 and 8 against Defendants in their official and personal capacities. (Doc. 1 ¶¶ 129, 133, 150.) Rooks and Hill join Peoria's argument that Plaintiff's state law claims are barred for failure to comply with Arizona's Notice of Claim statute. (Doc. 12 at 4-6.) Therefore, because the Complaint sues Defendants in their capacity as "public officials," and because the Court finds Plaintiff's Notice is invalid, it will dismiss Count 6 completely and dismiss Counts 7 and 8 against Rooks and Hill in their official capacities.

Rooks and Hill have not argued any basis for dismissal of Counts 7 and 8 in their personal capacities; therefore, those claims survive.

**2.  Count 4: First Amendment Retaliation**

In Count 4, Plaintiff alleges Rooks and Hill acted under color of state law "when

they subjected Plaintiff to retaliation for their protected speech." (Doc. 1 ¶¶ 100-12.) Rooks and Hill seek dismissal of Count 4 against them, arguing (1) Plaintiff fails to state an adverse employment action; and (2) they are entitled to qualified immunity. (Doc. 12 at 6-13.)

### i. Adverse Employment Action

To state a claim under Section 1983, a plaintiff must allege both (1) the "deprivation of a right secured by the federal Constitution or statutory law," and (2) "that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). And to establish a First Amendment retaliation claim, a plaintiff must also allege (1) that they engaged in protected speech; (2) that the defendant took adverse employment action; and (3) that the plaintiff's speech was a substantial or motivating factor for the adverse employment action. *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003).

"An adverse employment action is any action 'reasonably likely to deter employees from engaging in protected activity.'" *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004) (quoting *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000)); *see also Poland v. Chertoff*, 494 F.3d 1174, 1180 (9th Cir. 2007) ("An adverse employment action is any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity.") (quotations and citation omitted).

Rooks and Hill contend dismissal is warranted because Plaintiff has not alleged they were subject to an adverse employment action, which is a prima facie element of Plaintiff's retaliation claim. (Doc. 12 at 6-9.) More specifically, they argue the *only* alleged employment action they participated in was the failed motion to remove Plaintiff's name from a contract renewal list during a board meeting, and this isolated instance does not constitute an "adverse employment action." (*Id.*) Rooks and Hill say this is so because the Board was required to renew Plaintiff's contract under Arizona law and due process principles; and therefore, the motion was of no legal significance. (*Id.*)

The Court is not persuaded. First, Rooks and Hill ignore Plaintiff's well-pled allegations that they embarked on a smear campaign and repeatedly disparaged Plaintiff before, during, and after the March 9, 2023 board meeting. Moreover, Rooks and Hill's arguments are contrary to Ninth Circuit precedent and rely on a restrictive interpretation of *Nunez v. City of Los Angeles*, 147 F.3d 867 (9th Cir. 1987), that the Ninth Circuit rejected. In *Nunez*, the Ninth Circuit recognized that an adverse employment action need not impose a particularly great sanction, but "the plaintiff must nonetheless demonstrate the loss of a valuable governmental benefit or privilege." 147 F.3d at 875 (cleaned up). Because the plaintiff retained his job, and he only demonstrated "he was bad-mouthed and verbally threatened," his retaliation claim failed to set out an adverse employment action. *Id.*

Later, in *Coszalter*, the Ninth Circuit considered whether *Nunez* required a plaintiff to allege a "loss of a valuable governmental benefit or privilege" to establish an adverse employment action, or if other, less severe retaliatory acts qualify. 320 F.3d at 974. Expressly rejecting a "restrictive definition" of an adverse employment action, the Ninth Circuit held that the act "need not be severe and it need not be of a certain kind" to qualify. *Id.* at 974-75. Indeed, the court recognized that it had repeatedly upheld allegations of retaliation in circumstances where the act was not severe but could nonetheless chill an employee's protected speech. *Id.* at 975-76. (citing *Allen v. Scribner*, 812 F.2d 426, 428, 434-35 (9th Cir. 1987) (allegations that the plaintiff was reassigned and "otherwise harassed" for remarks made to the press were sufficient); *Thomas v. Carpenter*, 881 F.2d 828, 829 (9th Cir. 1989) (allegations that the plaintiff was banned from attending meetings and participating in exercises in retaliation for the plaintiff's political activity were sufficient); *Anderson v. Cent. Point Sch. Dist.*, 746 F.2d 505, 506 (9th Cir. 1984) (allegations that the plaintiff was temporarily suspended and insulted by employer were sufficient for retaliation)).[5]

---

[5] Rooks and Hill attempt to reduce Plaintiff's allegations to mere "bad-mouthing" and "verbal threats," which the Ninth Circuit reasoned are alone insufficient to constitute an adverse employment action. *Nunez*, 147 F.3d at 875. But Plaintiff alleges more than mere bad-mouthing or verbal threats. They allege they were the victim of harassment and a public campaign to tarnish their reputation and terminate their employment.

As alleged, Rooks and Hill's actions, in publicly condemning Plaintiff and seeking their non-renewal at a board meeting, are reasonably likely to deter other teachers or employees from speaking out on ostensibly controversial topics. This is sufficient to allege an adverse employment action. The fact that Rooks and Hill's motion for non-renewal did not—and legally could not—succeed is of no consequence. *Ray*, 217 F.3d at 1243 (adopting the approach to focus on "deterrent effects" rather than "the ultimate effects of each employment action"). Therefore, the Court finds Plaintiff has sufficiently alleged an adverse employment action.

### ii. Qualified Immunity

Rooks and Hill further contend Count 4 should be dismissed because they are entitled to qualified immunity. (Doc. 12 at 9-13.) Specifically, they assert: (1) Plaintiff's rights were not clearly established at the time of the alleged conduct; (2) Defendants were merely performing functions of their job; and (3) Defendants did not violate Plaintiff's First Amendment rights. (*Id.*)

A government official sued under Section 1983 is entitled to qualified immunity unless a plaintiff alleges "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Conduct violates a "clearly established" right if "the unlawfulness of the action in question [is] apparent in light of some pre-existing law." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1151-52 (9th Cir. 2021) (citations omitted).

At the pleading stage, "a motion to dismiss on qualified immunity grounds puts the Court in the difficult position of deciding far-reaching constitutional questions on a non-existent factual record." *Hernandez v. Ryan*, No. CV 09-2683-PHX-DGC, 2010 WL 4537975, at *2 (D. Ariz. Nov. 3, 2010) (internal citations and quotations omitted). As such, a Rule 12(b)(6) motion to dismiss should not be granted on the basis of qualified immunity unless a court "can determine, based on the complaint itself, that qualified immunity applies." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016).

       The Court cannot make this determination. To assess whether Plaintiff's First Amendment rights were "clearly established" would ask the Court to decide whether Plaintiff (1) spoke on a matter of public concern; and (2) whether they "spoke as a private citizen or public employee." *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 961 (9th Cir. 2011). Inquiry into the former requires consideration of "the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983); *see also Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 979-80 (9th Cir. 1998) (assessing whether a public employee's speech is constitutionally protected involves "a fact-sensitive, context-specific balancing of competing interests"). And the latter inquiry contemplates the "scope and content of [Plaintiff's] job responsibilities," *Johnson*, 658 F.3d at 966, which involves an evaluation of evidence not currently before the Court.

       Resolution of Defendants' qualified immunity defense requires further factual development, and therefore, dismissal at the pleading stage would be premature. Accordingly, the Court will deny Rooks and Hill's motion to dismiss Count 4 on the basis of qualified immunity.

       **3.**    **Punitive Damages**

       Rooks and Hill also seek an order that Plaintiff cannot recover punitive damages against them. (Doc. 12 at 13.) Their only argument in support of this request is that punitive damages are unavailable because Plaintiff has not alleged an adverse employment action to support a constitutional claim against Defendants. (*Id.*) Because the Court finds Plaintiff sufficiently alleges an adverse employment action, the Court will deny their motion as to punitive damages.

    **D.**    **Leave to Amend**

       Plaintiff requests leave to amend. (Doc. 16 at 12; Doc. 17 at 10.) Rule 15(a) of the Federal Rules of Civil Procedure governs leave to amend and "advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Fed. R. Civ. P. 15(a)). "This policy is

'to be applied with extreme liberality.'" *Id.* (citation omitted). Thus, Plaintiff's amendment requests should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). "An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (citation omitted).

### 1. Count 1

Plaintiff requests leave to amend Count 1 to include additional allegations that the April 2022 administrative leave and June 2022 investigation support their continuing violation theory. (Doc. 16 at 4-5.) An amendment for this purpose, however, would be futile. As existing precedent has made clear, the continuing violation theory does not apply to Plaintiff's disparate treatment claim. *See Morgan*, 536 U.S. at 113 (explaining that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"). Therefore, the Court will not grant Plaintiff leave to amend Count 1.

### 2. Counts 4 and 5

The Court will dismiss Counts 4 and 5 against Peoria because Plaintiff has not adequately pled Peoria is liable under *Monell*. Peoria argues that leave to amend should be denied as futile because Vesely would be entitled to qualified immunity on any amended claim. (Doc. 18 at 4.) Even assuming Peoria is correct, however, Peoria has provided this Court with no authority that Vesely's qualified immunity would preclude Plaintiff's claims against *Peoria*. And even then, assessing qualified immunity at this stage of proceedings would be premature for the reasons discussed. Accordingly, the Court will grant leave to amend Plaintiff's claims against Peoria in Counts 4 and 5.

### 3. Counts 6-8

The Court will dismiss Plaintiff's state law claims against Peoria completely and against Defendants Rooks and Hill in their official capacities for failing to comply with

Arizona law. Because any amendment could not cure this deficiency, leave to amend will be denied as futile.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** granting Defendant Peoria Unified School District's Motion to Dismiss (Doc. 13). Insofar as Count 1 alleges discrimination based on discrete events outside the limitations period, it is dismissed without leave to amend. Counts 4 and 5 are dismissed against Peoria with leave to amend. Counts 6-8 are dismissed against Peoria without leave to amend.

**IT IS FURTHER ORDERED** granting in part and denying in part Defendant Heather Rooks and Rebecca Hill's Motion to Dismiss (Doc. 12). Count 6 is dismissed without leave to amend and Counts 7 and 8 are dismissed against Rooks and Hill in their official capacities.

**IT IS FINALLY ORDERED** directing Plaintiff, if they so choose, to file an Amended Complaint no later than thirty (30) days from the date of this Order.

Dated this 21st day of November, 2024.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge